**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
**www.flsb.uscourts.gov**

In re:                                          Chapter 11

**AVENTURA HOTEL PROPERTIES, LLC,**             **Case No. 21-12374-BKC-RAM**
**TRIPTYCH MIAMI HOLDINGS, LLC,**               **Case No. 21-12375-BKC-RAM**

        **Debtors.**                          **Jointly Administered Under**
_____/       **Case No. 21-12374-BKC-RAM**

**AVENTURA HOTEL PROPERTIES, LLC,**
**a Florida Limited Liability Company, and**
**TRIPTYCH MIAMI HOLDINGS, LLC,**
**a Florida Limited Liability Company,**

        **Plaintiffs,**

**v.**                                          **Adv. Case No.**

**QR TRIPTYCH, LLC,**
**a Florida Limited Liability Company,**
**and JQ REAL ESTATE, LLC,**
**a Florida Limited Liability Company,**

        **Defendants.**
_____/

**ADVERSARY COMPLAINT**
**FOR DETERMINATION OF VALIDITY, PRIORITY, AND EXTENT**
**OF LIENS, FOR OBJECTION TO CLAIM, FOR EQUITABLE SUBORDINATION,**
**AND FOR AVOIDANCE OF TRANSFERS OF ESTATE PROPERTY AND DAMAGES**

        Plaintiffs, Aventura Hotel Properties, LLC ("AHP") and Triptych Miami Holdings, LLC

("TMH," and collectively, the "Debtors" or "Debtors-In-Possession") sue QR Triptych, LLC

("QR Triptych") and JQ Real Estate, LLC ("JQRE"), and state as follows:

**INTRODUCTION**

1.     The Debtors seek to advance the fair and equitable administration of their bankruptcy estates by suing to avoid certain inequitable transactions made for the benefit of Defendant QR Triptych - a former equity investor in Debtor TMH - that were paid from the assets of Debtor AHP.  In summary, the Debtors seek to avoid (i) $2.2 million transferred by Debtor AHP to Defendant JQRE (an entity related to QR Triptych and to which the Debtors were not indebted); (ii) $3 million transferred by Debtor AHP to Defendant QR Triptych on account of its equity in Debtor TMH; and (iii) the incurrence by Debtor AHP of an $8.2 million subordinated mortgage in favor of Defendant QR Triptych in exchange for nothing of value to Debtor AHP.  The Debtors also object to Defendant QR Triptych's filed proof of claim and seek mandatory and equitable subordination.

**JURISDICTION AND VENUE**

2.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a) and 1334(a).

3.     This is a core proceeding for which the Court is authorized to hear and determine all matters regarding this case in accordance with 28 U.S.C. § 157(b)(2)(A), (H), (I), and (K).

4.     Venue is proper in this Court pursuant to 28 U.S.C. § 1409(a).

**PARTIES**

5.     Plaintiff Aventura Hotel Properties, LLC ("AHP") is a limited liability company organized and existing under the laws of the State of Florida.  AHP is a Debtor-in-Possession pursuant to Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the above-captioned bankruptcy case.

6.    Plaintiff Triptych Miami Holdings, LLC ("TMH") is a limited liability company organized and existing under the laws of the State of Florida.  TMH is a Debtor-in-Possession pursuant to Chapter 11 of the Bankruptcy Code in the above-captioned bankruptcy case.  TMH owns 100 percent of the membership interests in AHP.

7.    Defendant QR Triptych, LLC ("QR Triptych") is a limited liability company organized and existing under the laws of the State of Florida.  Jesus Quintero ("Quintero") is a manager and control person of Defendant QR Triptych.

8.    Defendant JQ Real Estate, LLC ("JQRE") is a limited liability company organized and existing under the laws of the State of Florida.  Quintero is a manager and control person of Defendant JQRE.

## GENERAL ALLEGATIONS

### A.    The Triptych Project

9.    On July 10, 2014, AHP acquired the assemblage of land located at 3601 N. Miami Ave., Miami, FL 33127 (the "Land") for purposes of developing the Triptych Project.  AHP acquired the Land with the proceeds of a $7.5 million acquisition loan from Midtown Land 8, LLC ("Kresher Capital").[1]

10.    Initially, the Triptych Project was developed solely by the HES Group – a multinational, family owned and operated business that has developed and operated hotels, food and beverage concepts, and other real estate ventures.

11.    The Debtors utilized HES Group's employees and organizational resources in connection with the Triptych Project.  For example, HES Group supported the Triptych Project

---

[1] On August 26, 2016, Kresher Capital provided the debtor with an additional loan for $2.5 million that has been subsequently refinanced by the 21 Brands Loan (defined below).

by providing the Debtors with professional services and operational support that included office space, accounting support, contract management, due diligence services, development and project management, and branding expertise.

12.    HES Group initially devised the Triptych Project as a 475,000 square foot 3-unit condominium mixed-use project having (a) a 297-bedroom full-service lifestyle hotel, (b) approximately 40,000 square feet of premium retail space and 60,000 square feet of AAA office space, and (c) a structured parking garage with approximately 400 parking spaces.

13.    In 2015, AHP obtained a Conditional Approval Resolution by the City of Miami Urban Development Review Board for the Triptych Project.   Thereafter, AHP obtained an appraisal from CBRE that valued the Land "as is" at $27,500,000.

## B.    Quintero Joins the Triptych Project

14.    On or about November 11, 2016, HES Group drafted a memorandum of understanding with Jesus Quintero ("Quintero") regarding its participation in the Triptych Project (the "First MOU").  The First MOU is attached as **Exhibit A.**    Quintero is a manager and control person of Defendants QR Triptych and JQRE.

15.    The First MOU, among other things, states that Quintero possesses the economic strength and monetary liquidity to compliment and strengthen the position of HES Group to obtain a construction and development loan for the Triptych Project.  *See* First MOU at p. 2.  The First MOU was executed, in part, based on Quintero's ability to deliver additional development credentials to the Triptych Project.  Furthermore, the First MOU stipulates that:

   a.    HES Group will retain at least 50% of the equity in the Triptych Project based upon its contribution of the equity in the Land and $6 million in carrying costs incurred to date (§4.2);

   b.    Quintero will acquire 25% of the Triptych Project by contributing $12.5 million in capital (§4.3);

c.  HES Group and Quintero will act as co-developers of the Triptych Project (§7);

d.  Quintero and his team will participate and collaborate in the development of the Triptych Project with emphasis in the areas of project management, budgetary execution, and any other area where Quintero may provide the most value to the project (§7); and

e.  Quintero will actively participate in the negotiation of definitive conditions with the project's general contractor, with major effort being made to break ground in December 2015 (§9);

f.  Quintero will make available to HES Group their financial statements as quickly as possible, together with other available financial information, in order to begin the process of obtaining a formal commitment for a construction loan (§10).

16.  On November 16, 2015, Quintero wrote to HES Group that he was "in agreement with the general terms of the partnership" as described in the First MOU and that the "details will be refined in the final document." *See* 11/16/15 e-mail from J. Quintero to F. Arocha, which is attached as **Exhibit B.**

17.  On July 15, 2016, Debtor TMH amended and restated its operating agreement to: (1) admit Quintero as a manager; and (2) recognize the acquisition by Defendant QR Triptych of 25% of the membership interests in exchange for a capital contribution of $10,000,000 and a capital commitment of an additional $1,250,000.  A copy of the Amended and Restated Operating Agreement of Debtor TMH is attached as **Exhibit C.**

18.  In 2016, Debtor AHP entered into a Franchise Agreement with Hilton Worldwide for the branding and management of a 297-room Triptych Curio Collection by Hilton Hotel (the "Hilton Curio Concept").  Debtor AHP invested approximately $5 million to develop the Hilton Curio Concept, which included obtaining architectural and engineering designs from the world-class Miami-based firm of Bermello, Ajamil & Associates and interior design services from Wilson & Associates.  That same year, Debtor AHP engaged OHL Construction and entered into a Letter of Intent ("LOI") authorizing it to commence pre-construction work for the Triptych

Project.

**C.    Quintero Cashes Out From the Triptych Project**

19.    In 2017, Debtor AHP considered repositioning the Triptych Project to be smaller in scope, but ultimately decided against it.  Throughout the course of the development of the Triptych Project, disagreements arose between HES Group and Quintero concerning its management and operational affairs.  Quintero leveraged his control over the Triptych Project in order to begin withdrawing his capital to the detriment of creditors and other equity holders.  However, Quintero continued to exercise significant control over the operational aspects of the project and continued to solicit potential transaction partners to reposition or sell the Triptych Project.

20.    In 2017, Quintero leveraged his position of influence in the Triptych Project to withdraw $2.2 million in capital from the project, leaving the project unable to pay current debts as they became due.

21.    On October 13, 2017, Quintero's demands caused Debtor AHP to wire $2,000,000 from its Eastern National Bank Account ending 9807 to Defendant JQRE because of the equity interests of Defendant QR Triptych in Debtor TMH (the "First Cash Out").[2]

22.    On October 17, 2017, Quintero's demands caused Debtor AHP to wire $200,000 from its Eastern National Bank Account ending 9807 to Defendant JQRE because of the equity interests of Defendant QR Triptych in Debtor TMH (the "Second Cash Out").

23.    Debtor AHP's bank records reflecting the First Cash Out and Second Cash Out are attached as **Exhibit D**.

_____

[2] In November 2017, AHP refinanced the Kresher Capital's loan with a $9.5 million loan from 21 Brands, S.A. in exchange for a first priority mortgage against the Land (the "21 Brands Loan").

24.     Notably, Defendant QR Triptych was an equity holder in Debtor TMH, but received the First Cash Out and Second Cash Out from the assets of Debtor AHP – an entity that was not indebted to Defendants.

25.     In 2018, Quintero wanted to withdraw and liquidate QR Triptych's equity in the Triptych Project, but understood that doing so would cause the development to fail.  Instead, utilizing his significant economic leverage over the project, Quintero's demands caused Debtor AHP to enter into a refinancing transaction that resulted in his withdrawal of an additional $3 million from Debtor AHP and caused AHP to incur an additional $8.2 million in debt.

26.     On July 31, 2018, AHP entered into a $15 million first mortgage loan with LV Midtown LLC ("LV Midtown") that was used, in part, to refinance the 21 Brands Loan.  At the same time, and at the behest of Quintero, Debtor AHP entered into an $8.2 million subordinated mortgage loan (the "QR Mortgage Transfer") with Defendant QR Triptych, and, in exchange, QR Triptych redeemed its 25% equity interest in Debtor TMH and a cash payment of $3 million in loan proceeds from LV Midtown (the "Redemption Agreement").  A copy of the Redemption Agreement is attached as **Exhibit E**.  The loan closing statement evidencing the transfer of $3 million to QR Triptych is attached as **Exhibit F**.

**D.     Quintero Continues to Operate as a Joint Venture Partner**

27.     Quintero, through the interests of QR Triptych, continued to exercise significant involvement in the Triptych Project despite allegedly having converted his equity position in Debtor TMH to a debt position against Debtor AHP.

28.     For example, Quintero often hosted meetings at his offices between the HES Group and his professionals to discuss the continued co-development of the project. Additionally, Quintero continued to evaluate financing and co-development proposals and was

frequently involved in analyzing and recommending potential co-development projects.

29.     The Debtors never serviced QR Mortgage Transfer, paid interest or otherwise treated the QR Mortgage Transfer as debt.  Similarly, Defendant QR Triptych never made demand or filed suit to enforce any of its rights under the QR Mortgage Transfer.  Both Debtors and Defendant QR Triptych treated the QR Mortgage Transfer as equity in the Triptych Project.

30.     On January 13, 2020, Defendant HES Group and Quintero entered into an agreement to continue the development of the Triptych Project.  A copy of the memorandum of understanding is attached as **Exhibit G** (the "Second MOU").

31.     The Second MOU stipulates to the terms of Quintero's continued involvement as an equity participant in the Triptych Project.  Notably, the Second MOU provides for Defendant QR Triptych to recover its capital (documented in the form of debt).  *Id*. at ¶7.  The Second MOU, as with the first MOU, states that the development of the project shall be in the hands of Quintero, with HES Group principally responsible for hotel operations.  *Id*. at ¶¶9-10.

32.     Critically, the Second MOU states that if the joint venture contemplated therein is not consummated by a date certain, Quintero shall be entitled to recover the *capital* he had invested in the project plus interest or shall otherwise be tasked with selling the Land.  *Id.* at ¶13.  Notably, neither of the Debtors are parties to the Second MOU.

33.     As further evidence that the QR Mortgage Transfer was pre-textual, Debtor AHP never once made an interest payment to Quintero or Defendant QR Triptych based on the QR Mortgage Transfer.  Instead, the parties treated the QR Mortgage Transfer as a mere legal fiction, because Quintero continued to operate as an investor in the project and not a *bona fide* debt holder as evidenced by (i) the Second MOU; and (ii) his continued involvement in the normal operations and development of the Triptych Project.

**E.**     **The Debtors' Equitable Insolvency and Chapter 11 Cases**

34.     Following the Redemption Agreement, Debtor AHP, unable to pay its debts as they became due, defaulted on its first mortgage loan.  Moreover, Defendant AHP was rendered unable to pay trade creditors or to obtain construction financing to continue development of the Triptych Project.

35.     The Triptych Project was thereafter delayed. The project was not expected to break ground until October 2020 or be completed by October 2023.  However, the timeline was further impacted by the COVID-19 pandemic that brought the world to a standstill, causing unprecedented delays and obstacles that further frustrated AHP's ability to obtain additional capital and construction financing to move forward with the development of the Triptych Project.

36.     On September 20, 2020, LV Midtown commenced a foreclosure case captioned *LV Midtown, LLC v. Aventura Hotel Properties, LLC and QR Triptych, LLC*, Case No. 2020-018857-CA-01, which is currently pending in the Eleventh Judicial Circuit Court in and for Miami Dade County, Florida.

37.     On October 14, 2020, Debtor AHP was sued by OHL Building, Inc., the former general contractor for the Triptych Project, in a case captioned *OHL Building, Inc. v. Aventura Hotel Properties et al.*, Case No. 2020-022171-CA-01.

38.     On March 12, 2021 (the "Petition Date"), the Debtors filed voluntary petitions in this Court for relief under Chapter 11 of the Bankruptcy Code.

39.     On March 15, 2021, the Court granted the Debtors' Ex-Parte Motion for Joint Administration [ECF No. 11], providing for the designation of Case No. 21-12375-BKC-RAM as the "Lead Case."

40.     Since then, the Debtors have operated as debtors-in-possession pursuant to

9

Sections 1107 and 1108 of the Bankruptcy Code.

41.    On May 19, 2021, QR Triptych filed Claim No. 6-1 [Debtor AHP] (the "QR Claim").    Importantly, the QR Claim does not attach evidence of the Debtors' alleged indebtedness to QR Triptych.    Instead, the QR Claim merely attaches a promissory note evidencing the indebtedness to LV Midtown.

**COUNTS 1-4**
**AVOIDANCE AND RECOVERY OF AVOIDABLE TRANSFERS**
**PURSUANT TO SECTION 544 OF THE BANKRUPTCY CODE**
**AND SECTION 726.105(1)(B), FLORIDA STATUTES**

42.    Plaintiffs re-state and re-allege paragraphs 1 through 41 as if fully set forth herein.

43.    Pursuant to 11 U.S.C. § 544(b), Plaintiffs may avoid any transfer of an interest of a Debtor in property, or any obligation incurred by the Debtor that is voidable under applicable law by a creditor holding an unsecured claim, that is allowable under § 502 of the Bankruptcy Code, or that is not allowable only under § 502(e) of the Bankruptcy Code.

44.    Section 726.105(1)(b), Florida Statutes, provides:

(1) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

. . . .

(b) Without receiving reasonably equivalent in value in exchange for the transfer or obligation, and the debtor:

(1.) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

(2.) Intended to incur, or believed or reasonably should have believed that he or she would incur,

debts beyond his or her ability to pay as they became due.

45.    Further, pursuant to 11 U.S.C. § 550, in a fraudulent transfer action commenced under Chapter 726 of the Florida Statutes, the Debtors may recover, for the benefit of the estate, the property transferred or, if the Court so orders, the value of such property from (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; and (2) any immediate or mediate transferee of such initial transferee, i.e., any and all subsequent transferees.

46.    The transfers identified in the table herein were transfers made to each respective Defendant in which the Debtor (identified in each Count set forth in the table herein) did not receive reasonably equivalent value in exchange for each respective transfer pursuant to § 726.105(1)(b), Florida Statutes.

| Count | Transferor/ Transferee | Transaction | Property Transferred |
|---|---|---|---|
| 1 | Debtor AHP to Defendant JQRE | First Cash Out | $2,000,000 |
| 2 | Debtor AHP to Defendant JQRE | Second Cash Out | $200,000 |
| 3 | Debtor AHP to Defendant QR Triptych | Redemption Agreement / QR Mortgage Transfer | $3,000,000 |
| 4 | Debtors AHP and TMH to Defendant QR Triptych | Redemption Agreement / QR Mortgage Transfer | Avoidance of $8.2 million indebtedness in favor of Defendant QR Triptych |

47.    At the time(s) of each respective transfer, the Debtor (identified in each Count set forth in the table herein) was engaged in, or was about to engage in, a business or a transaction for which the remaining assets of the Debtor was unreasonably small in relation to the business or transactions in which the Debtor was engaged.

48.     At the time of each respective transfer identified in the table herein, the Debtor (identified in each Count set forth in the table herein) had incurred debts beyond its ability to pay as they became due.

49.     As a result of each respective transfer identified in the table herein, the Plaintiffs have been damaged pursuant to 11 U.S.C. § 544(b) for the total value of each respective transfer identified in the table herein.

50.     Each respective Defendant was the initial transferee or the entity for whose benefit each respective transfer as identified in the table above was made, and as a result, the Plaintiff is entitled to avoid and recover each respective transfer from each respective Defendant as identified in the table herein under 11 U.S.C. § 544 of the Bankruptcy Code and § 726.105(1)(a),Florida Statutes, as actual intent fraudulent transfers.

51.     Alternatively, each respective Defendant was the immediate or subsequent transferee of the initial transferee for whose benefit each transfer identified in the table herein was made, and as a result, Plaintiffs are entitled to recover each respective transfer as referenced above from each respective Defendant pursuant to § 726.105(1)(b), Florida Statutes, and 11 U.S.C. § 550(a)(2).

52.     Therefore, in accordance with 11 U.S.C. § 550(a), the recovery of property for the benefit of the estate is authorized to the extent that the respective transfers are avoided pursuant to 11 U.S.C. § 548(a)(1)(B).

**WHEREFORE**, Plaintiffs Aventura Hotel Properties, LLC and Triptych Miami Holdings, LLC respectfully request entry of judgment against each Defendant identified in each respective Count above (a) determining that each respective transfer that occurred within four (4) years of the Petition Date is avoidable under § 726.105(1)(B), Florida Statutes; (b) avoiding each

respective transfer and entering judgment in favor of Plaintiffs against each respective Defendant in such amounts as to be determined at trial, or the value thereof, and as otherwise detailed in the amounts set forth herein, plus pre-judgment interest from the date of the transfers and post-judgment interest, and costs of suit, all pursuant to 11 U.S.C. § 550; (c) disallowing any claim that each respective Defendant may have against the Debtors, including without limitation, pursuant to and as provided in 11 U.S.C. § 502(d); and (d) for such other and further relief as the Court deems just and proper.

**COUNTS 5-8**
**AVOIDANCE AND RECOVERY OF AVOIDABLE TRANSFERS**
**PURSUANT TO SECTION 544 OF THE BANKRUPTCY CODE**
**AND SECTION 726.106(1), FLORIDA STATUTES**

53.    Plaintiffs re-state and re-allege paragraphs 1 through 41 as if fully set forth herein.

54.    Pursuant to 11 U.S.C. § 544(b), Plaintiffs may avoid any transfer of an interest of a Debtor in property, or any obligation incurred by the Debtor that is voidable under applicable law by a creditor holding an unsecured claim, that is allowable under § 502 of Title 11, or that is not allowable only under § 502(e) of this title.

55.    Section 726.106(1), Florida Statutes, provides:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

56.    The transfers identified in the table herein made to each respective Defendant were transfers made without the Debtor (identified in each Count set forth in the table herein) receiving reasonably equivalent value in exchange for each respective transfer pursuant to

13

§ 726.106(1), Florida Statutes.

| Count | Transferor/ Transferee | Transaction | Property Transferred |
|---|---|---|---|
| 5 | Debtor AHP to Defendant JQRE | First Cash Out | $2,000,000 |
| 6 | Debtor AHP to Defendant JQRE | Second Cash Out | $200,000 |
| 7 | Debtor AHP to Defendant QR Triptych | Redemption Agreement | $3,000,000 |
| 8 | Debtors AHP and TMH to Defendant QR Triptych | Redemption Agreement / QR Mortgage Transfer | Avoidance of $8.2 million indebtedness in favor of Defendant QR Triptych |

57. At the time(s) of each respective transfer, the Debtor identified in each Count set forth in the table herein was engaged in, or was about to engage in, a business or a transaction for which the remaining assets of the Debtor was unreasonably small in relation to the business or transactions in which the Debtor was engaged.

58. At the time of each respective transfer identified in the table herein, the Debtor identified in each Count set forth in the table had incurred debts beyond its ability to pay as they became due.

59. As a result of each respective transfer identified in the table herein, Plaintiffs have been damaged pursuant to 11 U.S.C. § 544(b) for the total value of each respective transfer identified in the table herein.

60. Each respective Defendant was the initial transferee or the entity for whose benefit each respective transfer as identified in the table above was made, and as a result, the Plaintiffs are entitled to avoid and recover each respective transfer from each respective Defendant as identified in the table herein pursuant to 11 U.S.C. § 544 of the Bankruptcy Code

14

and § 726.106(1), Florida Statutes, as actual intent fraudulent transfers.

61.     Alternatively, each respective Defendant was the immediate or subsequent transferee of the initial transferee for whose benefit each transfer identified in the table herein was made, and as a result, each respective Plaintiff is entitled to recover each respective transfer as referenced above from each respective Defendant pursuant to § 726.106(1), Florida Statutes, and 11 U.S.C. § 550(a)(2).

62.     Therefore, in accordance with 11 U.S.C. §§ 544 and 548, the recovery of property for the benefit of the estate is authorized to the extent that the respective transfers are avoided under 11 U.S.C. § 548.

**WHEREFORE**, Plaintiffs Aventura Hotel Properties, LLC and Triptych Miami Holdings, LLC respectfully request entry of judgment against each Defendant identified in each respective Count above (a) determining that each respective transfer that occurred within four (4) years of the Petition Date is avoidable under § 726.106(1), Florida Statutes; (b) avoiding each respective transfer and entering judgment in favor of Plaintiff against each respective Defendant in such amounts as to be determined at trial, or the value thereof, and as otherwise detailed in the amounts set forth herein, plus pre-judgment interest from the date of the transfers and post-judgment interest, and costs of suit, all pursuant to 11 U.S.C. § 550; (c) disallowing any claim that each respective Defendant may have against the Debtor, including without limitation, pursuant to and as provided in 11 U.S.C. § 502(d); and (d) for such other and further relief as the Court deems just and proper.

**COUNTS 9-12**
**AVOIDANCE AND RECOVERY OF AVOIDABLE TRANSFERS**
**PURSUANT TO SECTION 544 OF THE BANKRUPTCY CODE**
**AND SECTION 726.106(2), FLORIDA STATUTES**

63.     Plaintiffs re-state and re-allege paragraphs 1 through 41 as if fully set forth herein.

64.     Pursuant to 11 U.S.C. § 544(b), Plaintiffs may avoid any transfer of an interest of a Debtor in property, or any obligation incurred by the Debtor that is voidable under applicable law by a creditor holding an unsecured claim, that is allowable under § 502 of Title 11, or that is not allowable only under § 502(e) of this title.

65.     Section 726.106(2), Florida Statutes, provides:

(2)     A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent.

66.     The transfers identified in the table herein to each respective Defendant were transfers made without the Debtor identified in each Count set forth in the table herein receiving reasonably equivalent value in exchange for each respective transfer pursuant to § 726.106(2), Florida Statutes.

| Count | Transferor/ Transferee | Transaction | Property Transferred |
|---|---|---|---|
| 9 | Debtor AHP to Defendant JQRE | First Cash Out | $2,000,000 |
| 10 | Debtor AHP to Defendant JQRE | Second Cash Out | $200,000 |
| 11 | Debtor AHP to Defendant QR Triptych | Redemption Agreement | $3,000,000 |
| 12 | Debtors AHP and TMH to Defendant QR Triptych | Redemption Agreement / QR Mortgage Transfer | Avoidance of $8.2 million indebtedness in favor of Defendant QR Triptych |

67.     At the time(s) of each respective transfer, the Debtor identified in each Count set forth in the table herein was engaged in, or was about to engage in, a business or a transaction for which the remaining assets of the Debtor was unreasonably small in relation to the business or transactions in which the Debtor was engaged.

68.     At the time of each respective transfer identified in the table herein, the Debtor identified in each Count set forth in the table had incurred debts beyond its ability to pay as they became due.

69.     As a result of each respective transfer identified in the table herein, Plaintiffs have been damaged pursuant to 11 U.S.C. § 544(b) for the total value of each respective transfer identified in the table herein.

70.     Each respective Defendant was the initial transferee or the entity for whose benefit each respective transfer as identified in the table above was made, and as a result, the Plaintiffs are entitled to avoid and recover each respective transfer from each respective Defendant as identified in the table herein pursuant to 11 U.S.C. § 544 of the Bankruptcy Code and § 726.106(2), Florida Statutes, as actual intent fraudulent transfers.

71.     Alternatively, each respective Defendant was the immediate or subsequent transferee of the initial transferee for whose benefit each transfer identified in the table herein was made, and as a result, each respective Plaintiff is entitled to recover each respective transfer as referenced above from each respective Defendant pursuant to § 726.106(2), Florida Statutes, and 11 U.S.C. § 550(a)(2).

72.     Therefore, in accordance with 11 U.S.C. §§ 544 and 548, the recovery of property for the benefit of the estate is authorized to the extent that the respective transfers are avoided under 11 U.S.C. § 548.

**WHEREFORE**, Plaintiffs Aventura Hotel Properties, LLC and Triptych Miami Holdings, LLC respectfully request entry of judgment against each Defendant identified in each respective Count above (a) determining that each respective transfer that occurred within four (4) years of the Petition Date is avoidable under § 726.106(2), Florida Statutes; (b) avoiding each respective transfer and entering judgment in favor of Plaintiff against each respective Defendant in such amounts as are determined at trial, or the value of thereof, and as otherwise detailed in the amounts set forth herein, plus pre-judgment interest from the date of the transfers and post-judgment interest, and costs of suit, all pursuant to 11 U.S.C. § 550; (c) disallowing any claim that each respective Defendant may have against the Debtor, including without limitation, pursuant to and as provided in 11 U.S.C. § 502(d); and (d) for such other and further relief as the Court deems just and proper.

### COUNT 13
### OBJECTION TO CLAIM

73.     Plaintiffs re-state and re-allege paragraphs 1 through 40 as if fully set forth herein.

74.     This is a cause of action objecting to the filed proof of claim identified as the QR Claim [Debtor AHP, Claim 6-1].

75.     The Debtors object to the allowance and payment of the QR Claim pursuant to Sections 502 and 510 of the Bankruptcy Code on the bases that: (i) the documents annexed to the QR Claim do not support the alleged indebtedness; (ii) the QR Claim is barred in whole or in part by the doctrines of setoff and recoupment in light of the conduct described in this adversary complaint; and (iii) the QR Claim is barred in whole or in part pending the recovery of the avoidable transfers made to Defendants as set forth above are disgorged and/or paid to the Debtor's bankruptcy estate.

**WHEREFORE**, Plaintiffs Aventura Hotel Properties, LLC and Triptych Miami Holdings, LLC demand judgment against Defendant QR Triptych: (i) disallowing the QR Claim and any other claim the QR Triptych may attempt to assert against the Debtors' estate in whole or in part; and (ii) for any other relief the Court deems appropriate.

**COUNT 14**
**MANDATORY SUBORDINATION OF CLAIM PURSUANT TO 11 USC § 510(b)**

76.    Plaintiffs re-state and re-allege paragraphs 1 through 40 as if fully set forth herein.

77.    The Redemption Agreement constitutes the sale of a security because it provides that Quintero and Defendant QR Triptych will sell their interests in Debtor TMH in exchange for the 2018 QR Cash Out and QR Mortgage Transfer.

78.    Section 510(b) of the Bankruptcy Code requires that a claim arising from the purchase or sale or rescission of the purchase or sale of a security of a debtor or an affiliate of a debtor must be subordinated to all claims that are senior to or equal to the claims of current holders of that security.  If the security is common stock, the holder of the claim has the same priority as current holders of common stock.

79.    If the Debtors are successful in avoiding the QR Mortgage Transfer and 2018 QR Cash Out, then QR Triptych's claims against the Debtors will arise from damages they claim to have sustained as a result of their sale of their equity in Debtor TMH.

80.    Defendants' claims against the Debtors are therefore subject to mandatory subordination under section 510(b) of the Bankruptcy Code.

**WHEREFORE**, Plaintiffs Aventura Hotel Properties, LLC and Triptych Miami Holdings, LLC request the entry of a judgment subordinating Defendant QR Triptych's allowed claim, if any, to the claims of all unsecured creditors and to the same priority of claims of equity

security holders pursuant to section 510(b) of the Bankruptcy Code and for such other and further relief as the Court deems just and proper

**COUNT 15**
**EQUITABLE SUBORDINATION OF CLAIM PURSUANT TO 11 USC § 510(c)**

81.    Plaintiffs re-state and re-allege paragraphs 1 through 41 as if fully set forth herein.

82.    Section 510(c) of the Bankruptcy Code provides that after notice and a hearing, the bankruptcy court, under the principles of equitable subordination, may:

(1)    Subordinate for purposes of distribution all or part of an allowed claim or interest to all or part of another allowed claim or interest.

83.    QR Triptych engaged in inequitable conduct, which resulted in injury to creditors and/or conferred an unfair advantage on Quintero and Defendant QR Triptych as creditors in the Chapter 11 case.

84.    Specifically, the acts at issue (as described above with reference to the Redemption Agreement) damaged the Debtors and their creditors.

85.    Equitable subordination is consistent with the Bankruptcy Code.

**WHEREFORE**, Plaintiffs Aventura Hotel Properties, LLC and Triptych Miami Holdings, LLC request the entry of a judgment equitably subordinating Defendant QR Triptych's allowed claim, if any, to those claims of all creditors and equity security holders pursuant to section 510(c) of the Bankruptcy Code and for such other and further relief as the Court deems just and proper.

**COUNT 16**
**DETERMINATION OF THE VALIDITY, PRIORITY, AND EXTENT**
**OF LIENS AND OTHER INTERESTS OF ALL DEFENDANTS IN PROPERTY**

86.     The allegations contained in paragraphs 1 - 41 are restated in their entirety.

87.     Pursuant to 11 U.S.C. §§ 506 and 507 and Fed. R. Bankr. P. 7001, the Plaintiffs

seek a determination of the validity, priority, and extent of liens or other interests of the Plaintiffs

and Defendants in property of the Debtors' jointly administered estates, including but not limited

to, the Land, the Triptych Project, and the QR Mortgage Transfer.

88.     The Plaintiffs each claim an interest in property presumed to be property of the

estates, but subject to the competing and disputed claims of Defendants QR Triptych and

Quintero, including but not limited to, the Land, the Triptych Project, and the QR Mortgage

Transfer.

89.     The Plaintiffs are uncertain as to their rights against the competing and disputed

claims of Defendant QR Triptych and its alleged rights, title, and interests in these assets

conferred by virtue of the Redemption Agreement and QR Mortgage Transfer, and their rights as

purported secured creditors of the Debtors as evidenced by Claim No. 8-1 filed by Defendant QR

Triptych.

90.     The Plaintiffs reserve the right to contest or otherwise take a position as to the

interests of the Defendants in the property of the estates, including but not limited to, the Land,

the Triptych Project, the Redemption Agreement, the QR Mortgage Transfer, and their rights as

purported secured creditors of the Debtors as evidenced by Claim No. 8-1 filed by Defendant QR

Triptych.

**WHEREFORE**, Plaintiffs Aventura Hotel Properties, LLC and Triptych Miami

Holdings, LLC seek judgment against QR Triptych, their successors, assigns, officers, directors,

shareholders, and affiliates to: (1) determine the validity, priority, and extent of liens, security interests, or other claims, including without limitation, the Land, the Triptych Project, the Redemption Agreement, QR Mortgage Transfer, and their rights as purported secured creditors of the Debtors as evidenced by Claim No. 8-1 filed by Defendant QR Triptych; and (2) grant such other and further relief as the Court deems just and proper.

**COUNTS 17-20**
**UNJUST ENRICHMENT**

91.    The allegations contained in paragraphs 1 - 41 are restated in their entirety.

92.    The Debtors conferred a benefit on each Defendant by making the transfers as set forth in the chart below.

| Count | Transferor/ Transferee | Transaction | Property Transferred |
|-------|------------------------|-------------|----------------------|
| 17 | Debtor AHP to Defendant JQRE | First Cash Out | $2,000,000 |
| 18 | Debtor AHP to Defendant JQRE | Second Cash Out | $200,000 |
| 19 | Debtor AHP to Defendant QR Triptych | Redemption Agreement | $3,000,000 |
| 20 | Debtors AHP and TMH to Defendant QR Triptych | Redemption Agreement / QR Mortgage Transfer | Avoidance of $8.2 million indebtedness in favor of Defendant QR Triptych |

93.    Each Defendant knowingly and voluntarily accepted and retained the benefit conferred by the Debtors in each transaction described in the chart above.

94.    The circumstances are such that it would be inequitable and unjust for each Defendant to retain the benefit conferred by each Debtor as described above without first paying the respective bankruptcy estates the reasonably equivalent value thereof.

95.    Each Defendant has been unjustly enriched at the expense of the Debtors.

96.    The Debtors are entitled to the return of those amounts in which Defendant was unjustly enriched through the process of disgorgement or any other appropriate remedy.

**WHEREFORE**, Plaintiffs Aventura Hotel Properties, LLC and Triptych Miami Holdings, LLC respectfully request the Court enter judgment against each Defendant, in the amount in which it was unjustly enriched, together with interest and costs, and award such further relief as the Court may deem just and proper.

## RESERVATION OF RIGHTS

The Debtors reserve the right to amend this Complaint to assert any additional claims for relief against the Defendants as may be warranted under the circumstances and as otherwise allowed by law.

**Dated:  June 15, 2021.**

GENOVESE JOBLOVE & BATTISTA, P.A.
Counsel to the Debtors-in-Possession
100 S.E. 2nd Street, Suite 4400
Miami, FL  33131
Tel.: (305) 349-2300
Fax.: (305) 349-2310

By:____/s/ Jesus M. Suarez_____
        John H. Genovese, Esq.
        Fla. Bar No. 280852
        Jesus M. Suarez, Esq.
        Fla. Bar No. 60086

23